No. 36,579

CHARLES H. HOULT and LOUISE K. HOULT, *Appellees*, v. SAM RICH, BESSIE RICH and MAX WOODBURN, Partners doing business as Rich Sign Company, *Appellants*.

(170 P. 2d 834)

588

Opinion filed July 6, 1946.

*P. K. Smith,* of Wichita, argued the cause, and *A. M. Ebright* and *Ralph E. Gilchrist,* both of Wichita, were on the briefs for the appellants.

*Howard T. Fleeson,* of Wichita, argued the cause, and *Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to quiet title to land. Plaintiffs prevailed and defendants have appealed.

The trial court found generally in favor of the plaintiffs, Charles H. Hoult and Louise K. Hoult, his wife. The defendants were Sam Rich, Bessie Rich and Max Woodburn, partners doing business as "Rich Sign Company." The material facts, in substance, were:

Charles H. Hoult acquired title to a southwest quarter section of land in controversy by warranty deed from D. R. Lauck on January 31, 1944; the deed contained no reservations or exceptions; the land was situated approximately five and one-half miles east of the city of Wichita and immediately north of U. S. highway 54; in 1940 appellees had acquired the adjoining southeast quarter and lived thereon; that quarter section was also situated immediately to the north of highway 54; on the southwest quarter now involved and along the north side of the highway appellants had erected fifteen or sixteen advertising display signs of various sizes for different business concerns; the signs except for the intervening spaces covered the entire length of that quarter section; the name "Rich Sign Company" appeared on each sign; some of them were swinging signs; the signs were set in concrete; when Charles H. Hoult purchased the southeast quarter four years previously appellants had similar signs located along the highway on that quarter section; at that time appellees requested appellants to remove the signs therefrom and appellants complied promptly; they did not advise appellees of any contractual or other right to erect and maintain the display signs thereon; Charles H. Hoult testified that when he acquired the southwest quarter he believed appellants would remove the signs from

that quarter; after appellees purchased the southwest quarter they constructed a road from their home onto the adjoining southwest quarter and also sowed oats thereon; approximately five months after purchasing the southwest quarter appellees requested appellants by letter to remove the signs on that land; appellants did not then assert contractual or other rights in or to the land; on the contrary they advised appellees they had no help at that time but would remove the signs after the war; a few months after this action was commenced appellants sent appellees a rental check which appellees neither cashed nor returned.

Appellants defended primarily on the ground they had been in the open, notorious and peaceable possession of the land under an unacknowledged and unrecorded written contract with appellees' vendor since October, 1938; under the terms of that contract which they claimed to have fully performed they had a right to the possession and occupancy of the premises for the purpose of erecting and maintaining the advertising signs thereon until October 16, 1947; appellees had actual notice of that possession prior to their purchase and acquired the land subject to appellants' rights therein.

Appellants also now assert appellees ratified the contract and are estopped to deny appellants' rights in the land.

It is conceded the 1938 written contract under which appellants claimed the·right to erect and maintain the signs on the land in question was not recorded. It is likewise conceded appellees had notice of the signs on the land before they purchased. G. S. 1935, 67-223, provides:

"No such instrument [referring to instruments affecting real estate] in writing shall be valid, except between the parties thereto, *and such as have actual notice thereof,* until the same shall be deposited with the register of deeds for record." (Emphasis supplied.)

In *Pope v. Nichols,* 61 Kan. 230, 59 Pac. 257, the words "actual notice" were construed and it was held:

"The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." (Syl. ¶ 3.)

In *Faris v. Finnup,* 84 Kan. 122, 113 Pac. 407, the statute was again interpreted as follows:

"Under the statute providing that no conveyance of real estate shall be valid, except as between the parties and as to those who have actual notice,

until it is deposited for record (Gen. Stat. 1909, § 1672), actual notice may be express when it consists of knowledge actually brought personally home, or it may be implied when it consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. In the latter case the known facts must be sufficiently specific to impose the duty to investigate further, and they must furnish a natural clue to the ultimate fact." (Syl. ¶ 1.)

In *Edwards v. Myers*, 127 Kan. 221, 273 Pac. 468, it was declared:

"The 'actual notice' mentioned in R. S. 67-223 may be express or implied. It is implied when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to further inquiry, which further inquiry would inform him of the outstanding unrecorded conveyance." (Syl. ¶ 2.)

These earlier interpretations of the statute were followed in a recent case involving a purchaser's notice of the use of a stairway located in an adjoining building. (*Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 684-685, 157 P. 2d 805.) In these and other cases interpreting the statute it repeatedly has been emphasized that in applying the rule each case must be governed by its own peculiar circumstances. So in the instant case it is necessary to consider all pertinent facts in order to properly apply the rule. Upon all of the facts the trial court found generally in favor of plaintiffs, appellees.

Can we say as a matter of law appellees did not exercise reasonable diligence in failing to make further inquiry before purchasing the land in question? The record in the office of the register of deeds contained no notice of the written contract. Appellees, however, had notice of the signs on the land. A realistic approach to the question whether appellees should have made further inquiry under the circumstances requires a consideration of events in their chronological unfoldment. We start with the rule that the presence of signs on the southwest quarter was sufficiently informing to ordinarily require appellees to make inquiry concerning the right to erect and maintain them. It is elementary, however, that the presumption of actual notice arising from circumstances may be rebutted by the person sought to be charged with such notice. (*Penrose v. Cooper*, 88 Kan. 210, 214, 128 Pac. 362.)

The real question presented here is whether appellees' failure to make further inquiry prior to purchase compels judgment for appellants, as a matter of law, under the facts and circumstances of this particular case. Can we say, as a matter of law, appellees' request

in 1940 that appellants remove the signs from the southeast quarter and appellants' prompt compliance without any assertion of rights in that land afforded appellees no reason whatever for believing appellants would also remove the signs from the southwest quarter? We should hesitate to say so. We think those facts constituted circumstances to be considered together with all other facts in determining whether appellees exercised reasonable diligence with respect to the duty to make further inquiry with respect to the signs on the southwest quarter. It is true appellees did not make inquiry of appellants prior to purchasing the southwest quarter. They did, however, soon thereafter request appellants to remove the signs from that land and appellants agreed to remove them.

When appellants agreed to remove the signs from the southwest quarter after appellees purchased that land, and agreed to remove them without asserting the slightest right to erect and maintain such signs, is it reasonable to assume appellants would have asserted a right to maintain them had appellees made inquiry prior to the purchase? There is not the slightest factual basis in the record for assuming appellants would have asserted such right. We cannot assume as a matter of law they would have done so. What basis is there then for appellants' contention a previous inquiry would have led appellees to a discovery of the ultimate fact, the unrecorded contract? We are able to find none. It probably would be more accurate to say, as a matter of law, that under the particular facts here presented a previous inquiry would have been futile. We need, however, not go that far. It is sufficient to say the record presented a fair question of fact on that point for the determination of the trial court. (*Jenness v. Jenness*, 112 Kan. 47, 49, 209 Pac. 822.)

Moreover, if appellees had made further inquiry prior to purchase and if appellants had produced the actual contract under which they claim, would the contract have disclosed the appellant partners possessed the rights they claim? We are compelled to answer in the negative. That instrument purported no agreement between appellees' vendor and the appellant partners. It purported to be a contract between appellees' vendor and a wholly different and distinct legal entity, namely, a corporation by the name of "The Rich Signs Corporation." Whatever rights, if any, such corporation may have had in and to the land in question cannot be determined in this action. The corporation is not a party to this litigation and it is asserting no rights. There is nothing in the

record which permits appellants to assert rights of the corporation if it had any.

Appellants complain concerning the admission of certain testimony over their objection. They objected to the testimony of one of the appellees, Charles H. Hoult, that he believed appellants would remove the signs from the southwest quarter. The facts forming the basis for the asserted belief were already in evidence. They have been related. The court could not say those facts formed no basis whatsoever for the asserted belief. The weight of the testimony touching the belief of the witness was for the trier of the facts. Ordinarily inquiry concerning rights, prompted by notice, should be made because failure to make inquiry evinces bad faith or gross neglect. (*Penrose v. Cooper,* supra, p. 215.) Testimony touching the belief of the witness was competent here. It reflected the condition of his mind based upon facts and circumstances in evidence. Under such circumstances it was proper for him to testify directly concerning his belief. (*Gardom v. Woodward,* 44 Kan. 758, 761, 25 Pac. 199; *Bowers v. Railway Co.,* 82 Kan. 95, 107 Pac. 777; *John Deere Plow Co. v. Klaurens,* 153 Kan. 151, 154, 109 P. 2d 98.)

Complaint is also made concerning the admission of another bit of testimony. In view of the record that testimony was immaterial and we need not pursue the matter.

Appellants further contend appellees accepted a rental check due under the contract in October, 1944, for the privilege of erecting and maintaining the signs and thereby ratified the contract and are estopped from maintaining this action. The contention cannot be sustained. There is no evidence appellees had knowledge of any rental contract. Appellants advised them of none prior to this action. The check was not sent to appellees until this litigation was pending. Appellees did not cash the check. It did not constitute payment. Under the circumstances appellees had no legal duty to return it. Appellants in nowise changed their position to their detriment by reason of appellees' failure to return the check. Appellees in nowise profited by the check. Moreover, appellants pleaded neither ratification nor estoppel.

The judgment is affirmed.